USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 4-12-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

THE EXPORT-IMPORT BANK OF THE
REPUBLIC OF CHINA,

        Plaintiff,          1:15-cv-09565 (ALC)

  -against-          **MEMORANDUM OPINION**

CENTRAL BANK OF LIBERIA as successor to
the NATIONAL BANK OF LIBERIA,

        Defendant.

------------------------------------------------------------X

**ANDREW L. CARTER JR., United States District Judge:**

Plaintiff The Export-Import Bank of the Republic of China ("Ex-Im Bank") brings this action to enforce two defaulted loan agreements against Defendant Central Bank of Liberia ("CBL") as successor to the National Bank of Liberia ("NBL"). CBL seeks to dismiss the Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611. On March 31, 2017, the Court denied CBL's motion to dismiss.

The primary issue here is whether CBL waived sovereign immunity on its loan agreements and is amenable to this Court's jurisdiction. The Court holds that CBL explicitly waived sovereign immunity for reasons that follow in this memorandum opinion.

1

## FACTUAL BACKGROUND[1]

NBL and its successor, CBL, are national banks established by the Republic of Liberia. Am. Compl. ¶ 3-4. NBL was formed in July 1974 pursuant to the National Bank of Liberia Act of 1974 ("NBL Enabling Act") and was succeeded in business and interest by CBL in October 1995. *Id.* at ¶ 4. Ex-Im Bank is a bank organized and existing under the laws of the Republic of China. *Id.* at ¶ 3.

On December 7, 1989, Ex-Im Bank and NBL executed two loan agreements (the "Loan Agreements"), where Ex-Im Bank loaned NBL $44 million dollars. *Id.* at ¶¶ 9-16. The Loan Agreements contain a number of provisions.[2] A choice of law provision states that the "Agreement and the rights and obligations of the parties hereunder and under the Note shall be construed by and interpreted in accordance with and governed by the laws of the State of New York, United States of America (without however giving effect to the conflict of law rules thereof)." Loan Agreements § 9.04. A jurisdiction provision designates the United States District Court for the Southern District of New York as one of several, non-exclusive fora for any suit or action concerning the Loan Agreements. *Id.* § 9.08. A service of process provision requires that NBL appoint a process agent in New York. *Id.* § 9.08(a).

Section 9.06 of the Loan Agreements, entitled "Waiver of Sovereign Immunity," provides:

> "The Borrower represents and warrants that this Agreement and the Loan being made hereunder is a commercial and not a public or governmental act and that the Borrower is not entitled to claim immunity from legal process with respect to itself or any property owned by it and/or held for its own account on the ground of sovereignty or otherwise under any law or in any jurisdiction where an action may be brought for the enforcement of any of the obligations arising under this Agreement, the Note or any related

---

[1] The following facts, accepted as true for purposes of the instant motion, are based on the allegations in the Amended Complaint and the documents attached thereto. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted) (evaluating a Rule 12(b)(1) motion). They also include references to affidavits and other materials submitted by the parties, which the Court is permitted to consider for the purpose of resolving the jurisdiction issue. *Id.*

[2] The First Loan Agreement is Exhibit A to the Am. Compl. and the Second Loan Agreement is Exhibit D to the Am. Compl. ECF No. 16-1,4.

> documentation. To the extent that the Borrower or any property owned by it and/or held for its account has or hereafter may acquire any right of immunity from set-off, legal proceedings, attachment prior to judgement, other attachments or execution of judgement, on the grounds of sovereignty or otherwise, the Borrower hereby irrevocably waives such right to immunity for itself and such property in respect of its obligations arising under this Agreement, the Note and such related documentation. The waiver of any such rights to sovereign immunity in this Section 9.06 is irrevocably binding on the Borrower's successors or assigns."

The Loan Agreements were each signed by Thomas D.V. Hanson, who was NBL's Chairman of the Board and Governor. Loan Agreements, at 23. On December 14, 1989, NBL's Board of Directors also authorized the loans by resolution. Days Decl. Exs. A and B. Also on the same day, as required by Section 7.04 of the Loan Agreements, Liberia's Minister of Justice, Jenkins Scott, issued two legal opinions to Ex-Im Bank in connection with both loan agreements confirming that the NBL was authorized to enter into the transactions, that the loans were authorized by the NBL, and that the NBL did not enjoy sovereign immunity in connections with the Loan Agreements. Days Decl. Exs. E and F.

Pursuant to the Loan Agreements, NBL appointed process agents in New York for the First Loan Agreement in December 1989 and for the Second Loan Agreement in January 1990. Days Decl. Exs. D and I. In January 1990, NBL received the $24 million disbursed by Ex-Im Bank pursuant to the First Loan Agreement. Days Decl. Ex G. In March 1990, NBL received $20 million disbursed by Ex-Im Bank pursuant to the Second Loan Agreement. Days Decl. Ex K. There have been subsequent acknowledgements by Liberia of the debts incurred to Ex-Im Bank. On March 23, 2001, Liberia's Ministry of Finance acknowledged that payment was owed to Ex-Im Bank in a letter to the bank. Days Decl. Ex L and M. On June 30, 2008, Antoniette M. Sayeh, the Liberian Minister of Finance, wrote to Ex-Im Bank, requesting a reschedule of the debt payments due under the Loan Agreements. Days Decl. Ex N.

Neither the NBL nor the CBL has ever made any principal or interest payments under the Loan Agreements. Am. Compl. ¶ 69. On December 7, 2015, Ex-Im Bank filed a complaint seeking the money disbursed and unpaid interest and subsequently amended its complaint on April 4, 2016. CBL moved to dismiss for lack of subject matter jurisdiction on August 26, 2016.

STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of a claim when a federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Congress has given district courts original jurisdiction over any civil actions against a foreign state, provided that the foreign state is not entitled to immunity. 28 U.S.C. § 1330(a). Where, as here, a defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations (Def. Mem. at 8), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff" but may also consider any relevant evidence before the Court. *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001).

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Permanent Mission of India to the United States v. City of New York*, 551 U.S. 193, 197 (2007). The parties do not dispute that NBL was an agency or instrumentality as defined in 28 U.S.C. § 1603(b). Am. Compl. ¶ 4. Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). "Once the defendant presents a prima facie case that it is a foreign sovereign [or an instrumentality of a foreign sovereign], the plaintiff has the burden of going forward with evidence that, under the exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." *In re Terrorist*

*Attacks on Sept. 11, 2001*, 714 F.3d 109, 114 (2d Cir. 2013) (internal quotation marks and citation omitted).

## DISCUSSION

One of the exceptions to the FSIA is that a foreign state may itself waive immunity "either explicitly or by implication." 28 U.S.C. § 1605(a)(1). The term "explicit" means "clear and unambiguous." *Capital Ventures Int'l v. Republic of Arg.*, 552 F.3d 289, 293 (2d Cir. 2009). Plaintiffs argue that NBL has explicitly waived such immunity in Section 9.06 of the Loan Agreements. The Court agrees.

In *Capital Ventures Int'l*, the Second Circuit held that a provision in a contract between the Republic of Argentina and an owner of bonds issued by Argentina constituted explicit waiver of sovereign immunity. 552 F.3d at 293-94. The provision in *Capital Ventures Int'l* is substantially similar to Section 9.06 and even includes some of the exact same language.[3] Section 9.06 in the Loan Agreements constitutes a clear and unambiguous waiver of sovereign immunity by NBL and satisfies the requirement of explicit waiver.

However, CBL contends that the waiver is not valid because NBL, as an institution, and Mr. Hanson, as its agent, lacked the actual authority to enter into the agreement. CBL also submits, pursuant to Fed. R. Civ. P. 44.1, a declaration by James E. Pierre, an expert in Liberian Law, who opines that the Loan Agreements and waivers of sovereign immunity therein are invalid under Liberian law due to the failure of the Liberian legislature to approve the

---

[3] *Compare* "[t]o the extent that the Republic has or hereafter may acquire any immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise), with respect to itself or its revenues, assets or properties, the Republic hereby irrevocably waives such immunity in respect of its obligations under the Bonds to the extent it is permitted to do so under applicable law," *Capital Ventures Int'l*, 552 F.3d at 293-94, *with* language from Section 9.06 of the Loan Agreements, "[t]o the extent that the Borrower...has or hereafter may acquire any right of immunity...on the grounds of sovereignty or otherwise, the Borrower hereby irrevocably waives such right to immunity for itself and such property in respect of its obligation arising under this Agreement, the Note and such related documentation."

5

transactions as required by Article 34(d)(iii) of Liberia's Constitution. *See* Pierre Decl. ¶¶ 8-12, 21-31. CBL argues that actual authority to enter into the contract is determined by Liberian law. Ex-Im Bank does not address this choice of law issue with regards to which law governs actual authority, but maintains that under Liberian law NBL was authorized to enter the contract.

The Loan Agreements provide that it should be interpreted and construed in accord with New York law. Loans Agreements ¶ 9.04. Thus, the validity of the Loan Agreements turn on New York law. *See Themis Capital, LLC v. Democratic Republic of Congo*, 881 F.Supp.2d 508, 520 (S.D.N.Y. 2012). "Under New York law, an agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." *Highland Capital Mgmt. v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010) (citation omitted). Where a commercial transaction is with a foreign state and that state has the most significant relationship to the transaction, New York law turns to the law of the foreign state in order to determine actual authority of the agent to enter into a contract. *Themis Capital, LLC*, 881 F.Supp.2d at 521 (citation omitted). Matters of foreign law are questions of law for the court to decide. *See* Fed. R. Civ. P. 44.1.

Based on the facts in the parties' submission, CBL has the most significant relationship with the transaction at issue. If plaintiff's claims are successful, CBL will owe more than $44 million dollars in addition to unpaid interest totaling more than $35 million. Thus, Liberian law governs whether NBL was able to enter into a contract with Ex-Im Bank.

Liberian law gives NBL the authority to contract with Ex-Im Bank. The Liberian legislature passed a law, entitled "An Act to Authorize the Establishment of a National Bank of Liberia" ("NBL Enabling Act"), establishing the NBL. Solomon Decl. Ex. C. One of the

powers delegated to NBL by the NBL Enabling Act is the power to "enter into contracts and issue obligations..." *Id.* at Part II, § 3(3). The powers of the NBL are "vested in a Board of Directors," and the Governor of the NBL has "the power to act, contract, and sign instruments and documents, on behalf of [NBL]." *Id.* at Part IV, § 10(1),(3). Thus, a review of the NBL Enabling Act demonstrates that the Liberian legislature gave NBL the authority to make the Loan Agreements.

CBL's attempts to argue otherwise are unpersuasive. James Pierre, the CBL's expert on Liberian law, notes that Article 34(d)(iii) provides that the Liberian government cannot raise any loans without "the authority of legislative enactment." Constitution of Republic of Liberia (1986), art. 34(d)(iii)[4]; Pierre Decl. ¶¶ 8-12. The NBL Enabling Act provides such authorization, but Pierre opines that the NBL Enabling Act does not authorize the NBL to enter into this kind of loan agreement. Pierre Decl. ¶¶ 13-20. Pierre reasons without citation that because Part VII, Section 34(a) in the NBL Enabling Act authorizes NBL to engage in specific financial transactions with "financial institutions doing business in Liberia" with regards to notes and bills of exchange that mature within 270 days of acquisition by NBL, it follows that NBL cannot borrow long term loans. *Id.* But such logic fails. The specific provision bears no discernible connection to NBL's ability to receive long term financing as authorized by the broad grant of power to enter into long term contracts.

Although the Deputy Minister of Justice of Liberia, Harriet G. Badio, has submitted a declaration expressing the Liberian Ministry of Justice's agreement with Pierre's opinions on Liberia's law (Badio Decl., ECF No. 55), Liberia's view is not conclusive in this matter. *See Themis Capital LLC v. Republic of Congo*, 626 Fed. App'x 346, 348 (2d Cir. 2015) (affirming

---

[4] Frischknect Decl. Ex. D, ECF No. 43

District Court's conclusion as a matter of law that the DRC signatories to a financial acknowledgement letter had the actual authority pursuant to DRC law to bind DRC to the agreement, despite the DRC arguing for a contrary construction of its law); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 92 (2d Cir. 2002) ("[A] foreign sovereign's views merit—though they do not command—some degree of deference."). Liberia's view on the law does not command deference here, where, at the time of the transaction, Liberia's Minister of Justice issued a legal opinion finding that NBL was duly authorized to enter into the loan and that the making of the loan did not violate any provision of any applicable constitutional provision or law of Liberia. Therefore, the Court holds that NBL had actual authority to enter into the Loan Agreements. Accordingly, the explicit waiver of sovereign immunity by NBL is effective.

## CONCLUSION

For the reasons stated above, the Court affirms its order denying Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).

Dated:    April 12, 2017
             New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**